UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CATALINO ARCE,

                Petitioner,

-vs-

CALVIN E. WEST,

                Respondent.
_____

**DECISION AND ORDER**
**No. 04-CV-6607T**

## I. Introduction

*Pro se* petitioner Catalino Arce has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 9, 1997, in County Court, Niagara County, convicting him, after a jury trial, of six counts of Sexual Abuse in the First Degree, five counts of Sodomy in the First Degree, three counts of Menacing in the Second Degree, and three counts of Endangering the Welfare of a Child.

For the reasons stated below, the petition is denied.

## II. Factual Background and Procedural History

On April 26, 1996, Petitioner was arraigned on indictment no. 95-418, charging him with seven counts of Sexual Abuse in the First Degree, six counts of Sodomy in the First Degree, one count of Sodomy in the Second Degree, three counts of Menacing in the Second Degree, and three counts of Endangering the Welfare of a Child. The charges involved allegations by Petitioner's children.

On or before August 19, 1996, the trial court had dismissed the fifteenth and sixteenth counts of the indictment (relating to Petitioner's son Joshua Arce), with leave for the People to re-present said counts to the Grand Jury. On August 19, 1996, the People announced in court its intention to re-present the entire case with new information that had been developed with respect to the dates of the alleged incidents.

On October 2, 1996, Petitioner was arraigned on indictment no. 95-418A, which superseded[1] the original indictment no. 95-418.

On November 21, 1996, a <u>Huntley</u> hearing[2] was held, at which time the People offered the testimony of Niagara Falls Police Detective Donner. Donner testified that, on April 10, 1996, he and Detective Brooks were involved in questioning Petitioner at his house on 2222 21st Street in Niagara Falls. Hearing Minutes [H.M.] 25. The two officers brought Petitioner back to the police station, and advised him of his <u>Miranda</u> warnings. H.M. 28. According to Donner, Brooks advised Petitioner of the allegations made against him and that they concerned his three children, Joshua, Elliott, and Cameo. H.M. 30. Petitioner responded that "the kids were his children, were basically good children and that

---

[1] The trial court permitted the prosecution to file a superseding indictment for purposes of conforming the evidence (the correct date of the crime) to the proof before the Grand Juries; doing so changed no theories of the case.

[2] <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965) (trial court must conduct pretrial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

-2-

they don't tell extravagant lies and that -- when they did not tell the truth it was like lies that kids use most of the time, kid lies." H.M. 30. According to Donner, when Brooks confronted Petitioner with the allegations, Petitioner stated that the officers "would have to prove it in court . . . and that [the children] were lying." H.M. 31.

On December 2-4, 1996, a jury trial was held. At trial, Petitioner moved to admit the Grand Jury testimony of Dolores Warren. Warren had testified at the Grand Jury that David Marsh, the boyfriend of the sister of the victims, had called her and told her that he had put the children up to lying about the allegations of sexual abuse. Trial Transcript [T.T.] 611. Petitioner's attorney told the court that he had sought to have Warren served with a subpoena on two separate occasions and that the servers had been unable to locate her. T.T. 605-06. Warren testified in the Grand Jury that she had taped the conversation, but that the tape had been erased. T.T. 613. The court excluded the Grand Jury testimony of Warren because the Petitioner failed to make the requisite showing that her testimony bore sufficient indicia of reliability.

Also at trial, during an offer of proof outside the presence of the jury, Elliott Arce, eleven years old at the time of the testimony, testified that, at a time when he lived at his mother's home, he was at his father's apartment and his father chased him out of the apartment with a knife. T.T. 344. Elliott also

indicated that, on one particular occasion after the knife incident, he had spent the night at his father's apartment, and his father "molested" him.  T.T. 345.  The trial court ruled that the People would be able to offer proof of the knife incident because the alleged knife event preceded at least one act where forcible compulsion was an element of the crime charged.  T.T. 351.

Elliott also testified that, on the last occasion that he stayed at his father's apartment, his father had touched his "butt" and "penis", and that his father had "put his penis up [his] butt."  T.T. 364.  Elliott testified that his father told him he would kill him if he told anyone, and that his father was holding a knife when he said this to him.  T.T. 364-65.  Elliott further testified that his father made him touch the father's penis.  T.T. 365.  Elliott also testified as to a similar incident, which occurred at his father's apartment in December, in which his father "stuck his penis up [Elliott's] butt" and threatened to kill Elliott if he told anyone.  T.T. 367.

Joshua Arce, fourteen years old at the time of his trial testimony, testified that, around Christmas 1994, he, along with his sister and brother, was living with his mother.  T.T. 455.  In the month before Christmas, Joshua testified he was staying with his father when his father made him "suck on his thing and kiss him", and touched Joshua on his chest area while holding a knife and threatening to kill him.  T.T. 460.

Tenille Pelfrey, Joshua, Elliott and Cameo Arce's sister, testified that, in January of 1995, she saw the Petitioner chase Elliott with a knife. T.T. 485. David Marsh, Pelfrey's boyfriend, also testified about his recollection of the knife incident in which the Petitioner went after Elliott with a knife. T.T. 513.

The jury found Petitioner guilty of seven counts of Sexual Abuse in the First Degree, five counts of Sodomy in the First Degree, one count of Sodomy in the Second Degree, three counts of Menacing in the Second Degree, and three counts of Endangering the Welfare of a Child, and he was sentenced to a total of thirty-two to ninety-six years of imprisonment.

The New York State Supreme Court, Appellate Division, Fourth Department unanimously affirmed the conviction on October 2, 2003. People v. Arce, 309 A.D.2d 1191 (4th Dept 2003). The New York Court of Appeals denied leave to appeal on December 29, 2003. People v. Arce, 1 N.Y.3d 567 (2003). Petitioner filed no motions for collateral relief in state court. This habeas petition followed.

Three of Petitioner's claims appear to be fully exhausted and properly before this court. See 28 U.S.C. § 2254(b)(1)(A). Petitioner's remaining claim – which he failed to apprise the state courts of – is deemed exhausted but procedurally defaulted. § 2254(b)(1)(B); see Grey V. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

## III. Discussion

### A. <u>Exhaustion and Procedural Default</u>

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that - (A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995)." The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir.1982) <u>(en banc)</u>, <u>cert. denied</u>, 464 U.S. 1048 (1984). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" <u>Grey</u>, 933 F.2d at 120 (2d Cir. 1991) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." <u>Id.</u> The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a

fundamental miscarriage of justice. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

**1. Speedy trial claim**

Petitioner claims that the state violated his constitutional right to a speedy trial. Petition [Pet.], ¶22C. The trial court denied Petitioner's motion to dismiss the indictment pursuant to N.Y. CPL § 30.30. The Appellate Division affirmed the trial court's decision, rejecting the contention of the Petitioner that the trial court had erred in denying the motion to dismiss the indictment pursuant to N.Y. CPL § 30.30.

We find that Petitioner did not exhaust his state remedies with respect to his speedy trial claim. "[A] federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue." Holden v. Miller, 2000 WL 1121551 at *5 (S.D.N.Y August 8, 2000) (Report and Recommendation adopted Oct. 10, 2000); see, e.g., Jones v. Vacco, 126 F.3d 408, 413-14 (2d Cir. 1997); Grady v. LeFevre, 846 F.2d 684, 688-89 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir. 1984); Daye, 696 F.2d at 191.

> The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of

constitutional litigation. Daye 696 F.2d at 194.

Petitioner's appellate brief made a general reference in the body of the document to Petitioner's "constitutional speedy trial rights", citing both the United States and New York State Constitutions as sources of the right. The portion of the brief addressing this claim dealt only with state statutory speedy trial issues under N.Y. CPL § 30.30, and employed only state cases and state law analysis[3].

Moreover,

> [i]t is well-settled that raising [a] CPL § 30.30 speedy trial claim does not fairly present the federal constitutional speedy trial claim to the state court: 'Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial; [it] is not . . . a statutory embodiment of the constitutional guarantee to a speedy trial.' Id. (quoting Gibriano v. Attorney Gen. of State if New York, 965 F.Supp. 489, 491-92 (S.D.N.Y. 1997) (quoting Woodard v. Berry, No. CV-90-1053, 1992 WL 106508 at *2 (E.D.N.Y. April 24, 1992)); *accord* Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *21 (S.D.N.Y. Nov. 17, 1999; see also, e.g., McGowan v. Miller, 109 F.3d 1168, 1172-73 (7th Cir. 1997); Cox v. Lockhart, 970 F.2d 448, 453-54 (8th Cir. 1992); Frazier v. Czarnetsky, 439 F.Supp. 735, 736-37 (S.D.N.Y.); Rodriguez v. Miller, 96 Civ. 4723, 1997 WL 599388 at *2 (S.D.N.Y. Sept. 29, 1997) ("[A] CPL § 30.30 claim has been held not to

---

[3] In fact, one of the cases Petitioner cites in his appellate brief – People v. Sinistaj, 67 N.Y.2d 236 (1986) – states that "CPL 30.30 requires that the People be prepared to proceed to trial within six months . . . from the commencement of the criminal action. The statute does not address problems involving speedy trial rights or due process in a constitutional sense. Rather, it is purely a statutory 'readiness rule'. It was enacted to serve the narrow purposes of insuring prompt prosecutorial readiness for trial, and its provisions should be interpreted accordingly."

-8-

> raise the federal constitutional speedy trial claim for purposes of a federal habeas petition."); Jackson v. McClellan, 92 Civ. 7212, 1994 WL 75042 at *2 (S.D.N.Y. March 4, 1994) ("merely vaguely allud[ing] to the federal constitutional in his point heading" while arguing CPL § 30.30 speedy trial claim did not fairly present a federal constitutional speedy trial claim to the state court).

Accordingly, this Court finds that the vague reference to the "constitutional right to a speedy trial", without appropriate argument, and with the only argument being under the state statutory speedy trial right of N.Y. CPL § 30.30, was not sufficient to put the state appellate court on notice of the federal constitutional basis of the claim and to exhaust the federal claim. Petitioner would now be barred from doing so because he could have raised it on direct appeal, but did not. N.Y. CPL § 440.10(2)©. Consequently, the speedy trial claim is deemed exhausted but procedurally barred. See Grey, 933 F.2d at 120 (2d Cir. 1991). The Petitioner has not attempted to show the requisite cause and prejudice or actual innocence necessary to overcome this procedural default, and his speedy trial claim is denied.

Assuming, *arguendo*, that the Appellate Division did, in fact, adjudicate the claim on the merits, this Court does not find that the 67 day pre-trial delay[4] rises to the level of a Sixth Amendment

---

[4] The trial court determined that only 67 days of post-readiness delay were chargeable to the People. Petitioner, however, contends the length of the delay was actually longer than 67 days. According to Petitioner's calculations, all of the time from the filing of the original indictment on April 23, 1996 until July 8, 1996, should have been chargeable to the People,

speedy trial violation. See Barker v. Wingo, 470 U.S. 514, 530 (1972) (establishing balancing test to determine when defendant has been deprived of Sixth Amendment right to a speedy trial).

**B.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).    The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision.

---

as well as the period following July 8, 1996 until November 21, 1996, when the Petitioner filed the motion to dismiss.

Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**1. Prior use of force**

Petitioner claims that the trial court's decision to admit evidence of prior use of force[5] violated his constitutional due process rights under the Fifth and Fourteenth Amendments. Pet., ¶22A. The Appellate Division affirmed the trial court's decision and concluded that the trial court properly permitted the People to present proof on their case-in-chief concerning an uncharged incident in which Petitioner, while brandishing a knife, chased one of his sons outside the house. The Appellate Division concluded that the probative value of that evidence on the issue of forcible compulsion outweighed its prejudicial tendency to establish that defendant had a criminal propensity.

Federal constitutional law protecting the right to a fair trial is clearly established, but erroneous evidentiary rulings by a state trial court generally do not rise to the level of due process violations upon which a court may issue a writ of habeas corpus. See Chambers v. Mississippi, 410 U.S. 284, 294 (1973);

---

[5] Prior to trial, the People moved pursuant to People v. Ventimiglia, 52 N.Y.2d 350, 361, 438 N.Y.S.2d 261 (1981) (admissibility of evidence of uncharged crimes), for a ruling pursuant to People v. Molineaux, 168 N.Y. 264 (1901) (admissibility of evidence of prior crimes to show motive, intent, absence of mistake or accident, common scheme or plan, or identity of person at trial), on the admissibility of a prior bad act. The trial court ruled that the People could admit testimony from Petitioner's 11 year-old-son, Elliott, and from two neighbors, that the Petitioner chased Elliott out of the Petitioner's apartment with a knife. The trial court ruled that the People could introduce the testimony about the knife incident because it was relevant to the issue of whether the Petitioner used forcible compulsion during the subsequent sexual assaults. T.T. 21, 351.

Lipinski v New York, 557 F.2d 289, 292 (2d Cir. 1977), cert. denied, 434 U.S. 1074; see also Nettles v. Wainwright, 677 F.2d 410, 415 (5th Cir. 1982); Gale v. Harris, 580 F.2d 52, 54 (2d Cir. 1978) (per curiam), cert. denied, 440 U.S. 965. The standard for such a violation is difficult to meet: the admitted evidence must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling v. United States, 493 U.S. 342, 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation," so the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling, 493 U.S. at 352. "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question was 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)). "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998), cert denied, 525 US 840 (1998) (quoting Estelle v. McGuire, 502 US 62, 69 (1991)).

This Court concludes that the state court's determination was not unreasonable.

The testimony of the Petitioner's prior use of a knife, while prejudicial, was nonetheless probative of an essential element [forcible compulsion] in the case.  As the Appellate Division correctly concluded, the probative value of the knife evidence on the issue of forcible compulsion outweighed its prejudicial tendency to establish that Petitioner had a criminal propensity. Moreover, as the Respondent correctly points out, the evidence was relevant in that the use of a knife at a prior time can impress a victim who is confronted by a knife a second time.

Thus, the Petitioner's claim that the admission of a prior use of a force denied him of his constitutional right to due process is without merit and must be denied.

**2. Exclusion of the Grand Jury testimony**

Petitioner argues that the trial court erred in denying his application to admit the Grand Jury testimony of Dolores Warren at trial, the exclusion of which deprived him of his constitutional right to present a defense. Pet., ¶22B.  According to Petitioner, the trial court's decision to deny the witness's exculpatory testimony that the victims were told to lie about the allegations of sexual abuse deprived him of his constitutional right to present a defense.  The Appellate Division affirmed the trial court's decision, finding that the Petitioner failed to make the requisite showing that the witness's Grand Jury testimony bore sufficient indicia of reliability.

The Supreme Court has made it clear that a criminal defendant has a constitutional right – grounded in the Sixth Amendment's Compulsory Process and Confrontation Clauses and the Fourteenth Amendment's Due Process Clause – to "a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986). While a defendant has the right to present a complete defense, that right is not without limits and "may in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Id. at 295; Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006). A defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability," id. at 302, and the "accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence," Taylor v. Illinois, 484 U.S. 400, 410 (1988); see also Clark v. Arizona, 548 U.S. 735, 854 (2006) ("[T]he right to introduce relevant evidence can be curtailed if there is a good reason for doing that.").

In considering whether the exclusion of Warren's testimonial evidence violated Petitioner's right to present a defense, we look to "the propriety of the trial court's evidentiary ruling." Wade v. Mantello, 333 F.3d 51, 59 (2d Cir. 2003); Washington v. Schriver, 255 F.3d 45, 57 (2d Cir. 2001). The inquiry into possible state evidentiary law errors at the trial level assists in ascertaining whether the Appellate Division acted within

objectively reasonable limits.  See Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000).  This court considers whether the evidentiary rule is "'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)).  A state evidentiary rule is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."  Scheffer, 523 U.S. at 308.

The trial court's exclusionary rulings were not erroneous as a matter of New York evidentiary law, and there is no basis upon which to find that the application of New York's evidentiary hearsay rules infringed on any of Petitioner's weighty interests.  The trial court excluded Warren's statement based on state evidentiary hearsay rules.  The Appellate Division affirmed the trial court's ruling noting that Petitioner failed to show the witness was subjected to vigorous examination before the Grand Jury or that her account was otherwise tested for credibility.  In addition, as the Respondent correctly points out, the witness was also not available at trial.  Thus, the state court adjudication was not "contrary to" or "an unreasonable application of" clearly established federal law.

This claim is without merit, and habeas relief must be denied.

### 3. Harsh and excessive sentence

Petitioner argues that the sentence imposed on him by the trial court – a series of maximum sentences running consecutively

-16-

for each transaction – was harsh and excessive.  Pet., ¶22D. Moreover, Petitioner contends that the interest of justice would be served if something less than the maximums were imposed.

Petitioner's assertion that the sentencing judge abused his discretion is generally not a federal claim subject to review by a federal habeas court.  See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.").  A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (Table, Text in Westlaw, 1996 WL 346669) (unpublished opinion).

Petitioner was convicted of seven counts of Sexual Abuse in the First Degree and one count of Sodomy in the Second Degree (Class D felonies), five counts of Sodomy in the First Degree (Class B felony), three counts of Menacing in the Second Degree and three counts of Endangering the Welfare of a Child (Class A

Misdemeanors).[6]   For Class B and Class D felony sex offenses, respectively, New York's sentencing scheme provides that sentences of imprisonment must be fixed by the court for a term of at least five years and not exceed twenty-five years, and a term of least two years and not exceed seven years.  N.Y. Penal Law §§ 70.80(4)(a)(1), (iii).  For Class A misdemeanors, the New York sentencing scheme provides that a sentence of imprisonment shall be a definite sentence, and, when imposed, shall be fixed by the court, and will not exceed one year. Id. § 70.15(1).

Petitioner's consecutive sentences of thirty-two to ninety-six years incarceration did not exceed the maximum sentences authorized for these offenses; instead, the overall sentence is reflective of the maximum sentence for each individual offense.  Moreover, the sentence is automatically capped pursuant to N.Y. Penal Law former § 70.30(1)(c)(iii).

Thus, the claim is not cognizable on habeas review and must be denied.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of

---

[6]    N.Y. Penal Law §§ 130.65, 130.45, 130.50, 120.14, 260.10.

appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 6, 2009
         Rochester, New York